**STATE of Missouri, Appellant,**

v.

**Lisa Diane SHUCK, Respondent.**

**No. WD 43065.**

Missouri Court of Appeals,
Western District.

Oct. 23, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1990.

Application to Transfer Denied
Jan. 9, 1991.

David McAllister, Keytesville, for appellant.

Jack Lukehart, Brunswick, for respondent.

Before TURNAGE, P.J., and
MANFORD and BERREY, JJ.

TURNAGE, Presiding Judge.

Lisa Diane Shuck was charged by information with possession of more than 35 grams of marijuana, § 195.202, RSMo 1986,[1] and the manufacturing and production of marijuana, § 195.211. The charge was filed following the execution of a search warrant for a house. Pursuant to a pretrial motion, the trial court held the affidavit which formed the basis for the issuance of the warrant was insufficient and suppressed the evidence seized pursuant to the warrant.

The State appeals pursuant to § 547.200 and contends the affidavit was sufficient. Reversed and remanded.

The affidavit of Corporal G.D. Kindle of the State Highway Patrol upon which the warrant was issued stated:

1. The affiant is a Corporal of the Missouri State Highway Patrol. He is a 9 year veteran of the patrol and is current-

---

1. All sectional references are to RSMo 1986.

ly assigned to the Troop B Marihuana Eradication Unit.

2. In October 1989, he received information from the Federal Drug Enforcement Administration that Mike Phegley, later identified as William Michael Phegley, date of birth 07–21–58, of Route 1, Box 187, Salisbury, Mo., had received two shipments of merchandise from Superior Growers Supply, Inc. on 07–12–89. The shipments were received via United Parcel Service and weighed 22 and 24 pounds each. This information was obtained through a Federal Subpoena executed by Drug Enforcement Administration Headquarters Marihuana Desk in Washington, D.C. on all marihuana hydrophonic [sic] growing equipment and marihuana seed selling companies who advertise in the High Times Magazine.

3. Superior Growers Supply, Inc. of 4870 Dawn Avenue, East Lansing, Michigan, is a company who sell indoor hydrophonic [sic] growing equipment and grow lights. They advertise in the High Times Magazine, a magazine that specializes in marihuana growing products and technology, and promotes growing of marihuana and concealment from law enforcement as well as the legalization of marihuana.

4. On October 30, 1989, Corporal J.L. Swearengen of the Missouri State Highway Patrol and I located the Phegley Residence in Prairie Hill, MO. The residence has a mailing address of Route 1, Box 189, Salisbury, Mo. A 1981 Oldsmobile bearing 1989 MO QFN824 License was observed in the driveway. The vehicle checks to Phegley. The mailbox near the residence bears the names Phegley and Shuck. All observed windows of the residence were covered with what appeared to be blankets hung horizontally. I verified through Kansas City Power and Light, Brunswick Office, that Mike Phegley was the utility customer for the location in Prairie Hill, MO. He had been the utility customer for that address since December 9, 1988. A check of wattage useage [sic] revealed that the Phegley Residence was using up to 4 times as much electricity as nearby neighbors.

5. As a Law Enforcement Officer trained in indoor marihuana growing operations, I know that indoor growing operations use large amounts of electricity to operate indoor grow lights and hydrophonic[sic] grow equipment. I also know that blankets are often used to conceal grow lights that are operated 24 hours a day and to obstruct the view of outsiders. The information obtained from the Drug Enforcement Administration identifying individuals who have placed orders with companies such as Superior Growers Supply, Inc. has resulted in indoor growing operations being located in eight of eight cases that I am aware of.

6. Attached to this Affidavit is a copy of Superior Growers Supply, Inc. Advertisement from the High Times Magazine and a copy of wattage useage for Mike Phegley, Jane Hooker (neighbor), and Sylvester M. Meadows (neighbor), all of Prairie Hill, MO. Also attached to this Affidavit is a copy of a teletype message from the Missouri State Highway Patrol dated October 16, 1989 indicating seven seizures of marihuana by Patrol Officers originating from information from the Federal Drug Enforcement Administration.

The law governing the requirements of an affidavit to support a search warrant is set out in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates* the Court held that the scrutiny by courts of an affidavit supporting a warrant should not take the form of de novo review. *Id.* 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. The Court said that a magistrate's determination of probable cause should be given great deference by reviewing courts and further stated that a grudging or negative attitude by a reviewing court toward affidavits supporting a warrant is inconsistent with the Fourth Amendment's strong preference for searches to be conducted pursuant to a warrant. *Id.* The Court further stated that courts should not interpret affidavits in a hypertechnical rather than a common-

sense manner in order to invalidate warrants. *Id.*

The Court stated the duty of the issuing magistrate and a court reviewing the affidavit and warrant as follows:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Id.* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

In this case the Highway Patrol received information from the DEA that Mike Phegley had received shipments from Superior Growers. Corporal Kindle stated that Superior Growers sells indoor hydroponic growing equipment and grow lights. This company advertises in High Times Magazine, which is a magazine that specializes in marijuana growing products and technology and further promotes the growing of marijuana and the concealment of such activity from law enforcement officers. The magazine also espouses the legalization of marijuana. All of this information was stated on Kindle's knowledge.

*Gates* stated that the Court had consistently recognized the value of corroboration of an informant's tip. Corroboration of the information from DEA consisted of information about the Phegley residence. The automobile parked in the driveway bore a license number issued to Phegley and the mail box bore the names of Phegley and Shuck. Further, the officers observed that all of the windows were covered with blankets hung horizontally. The company furnishing electricity for the Phegley residence was checked and it was found that Phegley was the utility customer for the location of the residence and had been for about a year. It was further discovered that the Phegley residence was using about four times as much electricity as the neighbors.

Kindle stated that he was trained in indoor growing operations and knew that such operations use large amounts of electricity. He also knew that blankets are often used to conceal grow lights which are operated twenty-four hours a day. Kindle further stated that information obtained from the DEA about individuals who had placed orders with companies such as Superior Growers had resulted in the discovery of indoor growing operations in all eight of such cases.

Viewing the affidavit in a commonsense manner as directed by *Gates* it is clear that the affidavit was sufficient to give the judge issuing the warrant a substantial basis for concluding that a search would uncover evidence of wrongdoing. The Fourth Amendment requires no more. *Id.* 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547.

Shuck would subject the affidavit to a hypertechnical examination by quibbling about whether people who cannot afford curtains or blinds for windows are thereby subject to search. That argument takes the fact of the blankets at the windows out of context and ignores the personal knowledge of Kindle that blankets are used to conceal illegal marijuana growing operations and the information which gave rise to a belief that such operations were being carried on in the residence sought to be searched. Likewise, the argument that the electricity usage was not tied to facts such as whether the residence was insulated ignores the fact that Phegley had ordered equipment from a company which sold to marijuana growers and the fact that grow lights consume a considerable amount of electricity.

Pursuant to the Gates' holding, the court should not subject the affidavit to a de novo review. Nor was it necessary for the State to prove that marijuana growing was actually being carried on in the residence in order to obtain a search warrant. Shuck would impose that burden on the State by arguing that African Violets may have been the plant being grown. As *Gates*

held "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision." *Id.* 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546[12]. Further, *Gates* held that " 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' " *Id.* 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546 (*quoting Spinelli v. United States,* 393 U.S. 410 at 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)).

The trial court took the view that the affidavit in this case gave rise only to a suspicion that criminal activity would be discovered. As demonstrated above, the affidavit was more than ample to satisfy the requirement of *Gates* and to give the judge a substantial basis for concluding that a search would uncover wrongdoing.

The information from the DEA was corroborated in essential respects and the affidavit was sufficient.

The order finding the affidavit insufficient and suppressing the evidence found as a result of the search is reversed. This cause is remanded for further proceedings with evidence found through the search to be admitted in evidence.

MANFORD, J., concurs.

BERREY, J., dissents in separate dissenting opinion.

BERREY, Judge, dissenting.

I must respectfully dissent. If the majority should prevail, no hydroponic horticulturist or African violet grower will be safe from unwarranted intrusions.

The facts as outlined by the majority are sufficient and need not be fully set forth again. Narcotic agents were supplied a list of names of persons who presumably purchased hydroponic lights. A drive by of the residence of one such person revealed blankets in the windows. A check of utility company records revealed a higher than normal consumption of electricity. From this innocuous information the narcotic agent presented an application for a search warrant to the local judge. The local judge found probable cause and the search warrant was issued. The premises were searched and marijuana plants were found. A motion to suppress was heard and the circuit judge quashed the search and state appeals.

There is no doubt that the Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983), substituted the "totality-of-the-circumstances" approach for the rigid "two-pronged test" under *Aguilar* and *Spinelli. Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

The totality of the circumstances in the instant case in which a detached neutral magistrate made a finding of probable cause and issued the search warrant is as follows: (1) merchandise was shipped to William Michael Phegley (This information was obtained from federal agents); (2) the company shipping this merchandise is a company that sells hydroponic growing equipment; (3) that the company advertises in High Times magazine, a magazine that specializes in marijuana growing products; and (4) blankets were hung in windows. The unidentified shipment of merchandise to Mr. Phegley is no crime. Superior Growers Supply, Inc. sells merchandise that is legal to market. It advertises its product, not an illegal act. Finally, there could be a multitude of reasons to hang blankets in the windows. This is not an illegal act. Taken alone or in totality none of the information rises to the level of probable cause. There is no informant's tip, no anonymous letter, no evidence of anyone peeking around the blanket covered windows. In our zeal to stamp out illicit drug use we must be vigilant not to stamp out the Fourth Amendment.

The facts herein are quite nebulous and have not before been reviewed by a Missouri court. We should look to our sister state of Idaho for guidance in this area. The court in *State v. Mason,* 111 Idaho 916, 728 P.2d 1325 (App.1986), dealt with this problem. There was no adequate verification of what the house contained. Further:

The state also relied on a utility company's records showing a large discrepancy in the use of electricity by the Masons between 1982 and 1983. The "large discrepancy" breaks down to an average monthly increase of 17.25 kilowatts. Together with the other evidence, this information is no more indicative of criminal behavior than of common place occurrences consistent with normal legitimate behavior. We decline to infer criminal activity from incidents and observations lending themselves more probably to an innocent, legal explanation than to a criminal interpretation.

In the instant case there is no verification of what the house contained and the increased use of electricity standing alone does not imply criminal activity. The American public is fed up with drugs and the many collateral criminal acts arising therefrom as evidenced by the increase in police ranks, border patrols and special taxes being voted by the people to stamp out this scourge. We, however, must be vigilant not to trample on our Bill of Rights to cure a momentary ill in our time. Failure to heed this thesis will invariably lead to less than desired results. Can martial law then be far removed or the Great Writ in jeopardy?