**STATE of Missouri, Respondent,**

v.

**Birdine M. MILLER, Stephen W. Miller, Appellants.**

Nos. 58571, 58572.

Missouri Court of Appeals, Eastern District, Northern Division.

July 9, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 21, 1991.

Application to Transfer Denied Oct. 16, 1991.

---

Dan Viets, Columbia, for appellants.

Craig V. Evans, Pros. Atty., Monroe County, Paris, for respondent.

AHRENS, Judge.

Appellants Stephen and Birdine Miller were charged by information with misdemeanor possession of marihuana in violation of § 195.202 RSMo (Supp.1989). The evidence supporting the charges was obtained pursuant to a search of appellants' home. At trial, appellants moved to quash the search warrant and suppress the evidence obtained through its execution. The trial court denied the motion after a hearing and convicted appellants after presentation of evidence, ordering each to pay a fine of $150.00 plus court costs. We affirm.

The search warrant in question was issued on November 8, 1989, based upon affidavits executed by Corporals Greg Kindle and Joe Swearengen of the Missouri State Highway Patrol. The affidavits upon which the warrant was issued were almost identical. We attach and incorporate Corporal Kindle's affidavit as Appendix A of this opinion.

On November 2, 1989, the affiants learned from the United States Drug Enforcement Administration (DEA) that Mr. Miller had in February, March, and June of that year received shipments from two companies that sell indoor hydroponic growing equipment, namely, Worms Way and Hamilton Technology Corporation. The DEA had obtained this information

pursuant to a subpoena served on all companies advertising in *High Times,* a periodical that the affidavits allege specializes in marihuana growing products and technology.

Corporals Kindle and Swearengen on November 7, 1989, drove to appellants' residence and confirmed the address, observing two vehicles later confirmed as registered to either or both appellants. The officers further observed "two or more outbuildings" in addition to the house, with electrical lines connected to one of them. The officers' inquiry to the local utility company revealed that Mr. Miller had been a customer at that location for at least three years, and that "an unusually large wattage" of electricity had been metered to Mr. Miller since February, 1989. At the hearing on appellants' motion, Corporal Kindle testified that appellants' electrical usage was more than twice the average usage of the area in which appellants resided. Further, the officers' surveillance of appellants' residence on November 7, 1989, did not indicate the presence of any grain-drying equipment or other large machinery that might use an increased amount of electricity. During the surveillance, the officers observed two large dogs and a "beware of dog" sign; the officers knew indoor marihuana growers to often use dogs as warning devices and deterrents to trespassers and law enforcement officers.

The officers in their affidavits asserted that Mr. Miller had two felony convictions from 1975. At the hearing on appellants' motion, Corporal Kindle testified that he had checked the computerized conviction records, which listed "first degree tampering" and "leaving the scene of an accident"; the results of this check were the basis for Corporal Kindle's affidavit assertions as to Mr. Miller's convictions. The disposition of both convictions showed "jail in lieu of bond." Corporals Kindle and Swearengen further asserted in their affidavits that the use of information from the DEA identifying persons who placed orders with companies such as Worms Way and Hamilton Technology Corporation had resulted in the discovery of indoor marihuana

cultivation in thirty-one of thirty-three similar cases in Missouri.

The trial court issued the search warrant on November 8, 1989, and the warrant was executed the same day. Officers confiscated numerous items of growing equipment, plant material, and smoking pipes. The plant material and pipes were later tested, and some were found to be or contain marihuana, or chemical derivatives of marihuana. The confiscated items were used as evidence against appellants at trial, resulting in appellants' convictions.

■ As a preliminary matter, we are constrained to note that the statement of facts in appellants' brief is argumentative and, as such, not in compliance with Rule 84.04(c). The issues presented are important, however, so we decline to dismiss the appeal. *See Reorg. School Dist. No. 7 Lafayette County v. Douthit,* 799 S.W.2d 591, 593 (Mo. banc 1990).

■ In their first subpoint, appellants attack the search warrant on the grounds that the allegations of the affidavits do not establish probable cause to believe any crime had been committed or any contraband would be found in their home. As noted earlier, the affidavits allege: (1) appellants purchased indoor gardening equipment from companies that advertised in *High Times* magazine; (2) appellants' electrical usage was unusually high; (3) appellants owned large dogs; (4) appellant Stephen Miller had two felony convictions; and (5) the use of the same DEA information in other searches had resulted in the discovery of indoor marihuana growing operations in a very large percentage of similar cases in Missouri.

■ It is fundamental that no warrant shall issue but upon probable cause. U.S. Const. amend. IV; Mo. Const. art. I, § 15; § 542.276.10(3) RSMo (Supp.1990). In arguing that no probable cause supported the search warrant at issue here, appellants single out each allegation of the affidavits and assert that none indicates criminal behavior. In so doing, however, appellants ignore the basic test of probable cause. Probable cause is to be determined in each

case by looking at the totality of the circumstances surrounding the warrant. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). In determining whether sufficient probable cause exists,

> [t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Id.* We give great deference to the issuing judge's determination of probable cause, *State v. Holland*, 781 S.W.2d 808, 812 (Mo.App.1989), and we will reverse only upon a showing of abuse of discretion and clear error. *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990).

In addressing appellants' claims, we look to the Western District's opinion in *State v. Shuck*, 800 S.W.2d 49 (Mo.App.1990), which is almost directly on point. In *Shuck*, the affidavit contained allegations virtually identical to those at issue in this case, except that in *Shuck* the affidavit made reference to blankets hung horizontally over the windows of the appellant's residence rather than to her prior convictions and ownership of dogs. *Id.* at 49–50. Viewing the affidavit as directed by *Gates*, the court in *Shuck* found the affidavit sufficient to support the issuing judge's determination of probable cause. *Id.* at 51. We are not persuaded by appellants' assertions that *Shuck* was incorrectly decided or is distinguishable on its facts.

■ We find no abuse of discretion on the facts before us. As noted earlier, the main thrust of appellants' argument asserts that none of the five allegations of the affidavits indicates criminal activity. The affidavits are not to be taken point by point to establish the sufficiency of probable cause. *State v. Bible*, 750 S.W.2d 676,

680 (Mo.App.1988). We find no clear error in the trial court's determination that, viewing the affidavits as a whole under the totality of the circumstances, sufficient probable cause existed to support the warrant. If the trial court's ruling is plausible in light of the record viewed in its entirety, this court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *State v. Antwine*, 743 S.W.2d 51, 66 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985)). Viewing the affidavits in a commonsense rather than hypertechnical manner, we find them sufficient to have given the judge issuing the warrant a substantial basis to conclude a search would uncover evidence of wrongdoing. *See Gates*, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547.

■ Appellants' argument that there are equally plausible, noncriminal explanations for appellants' purchase of gardening equipment, high utility usage, and ownership of dogs mischaracterizes the State's burden of proof in obtaining a search warrant. The State need not prove that marihuana was in fact being grown in appellants' home. Only the probability of criminal activity, not a prima facie showing, is the standard of probable cause. *Gates*, 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546 (*citing Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 645 (1969)).

■ Appellants further assert that the affidavits' reference to the successful use in other cases of the same DEA information used in this case is an attempt to justify the search of appellants' home through the results of previous searches. We disagree. Appellants are correct in arguing that probable cause must exist within the four corners of the affidavits supporting the warrant. *State v. Laws*, 801 S.W.2d 68, 70 (Mo. banc 1990). However, we view the reference to the previous searches as serving the legitimate purpose of corroborating the statements of an in-

formant (here, the DEA). *See Gates,* 462 U.S. at 241–46, 103 S.Ct. at 2334–36, 76 L.Ed.2d at 550–53. The officers permissibly relied on the information supplied by the DEA, because it was reasonably corroborated by other matters within the officers' knowledge.

■ Lastly, appellants argue that the affiants' failure to assert they witnessed any criminal activity or saw any contraband is fatal to the affidavit, citing *State v. Brown,* 741 S.W.2d 53 (Mo.App.1987), and its reference to *Herrington v. State,* 287 Ark. 228, 697 S.W.2d 899 (1985).

Neither *Brown* nor *Herrington* supports appellants' argument. *Brown* involved a search of an automobile which the court found premised merely on an association with the suspect car and individual. *Brown,* 741 S.W.2d at 58. The court found the facts in the search warrant affidavit too attenuated to create probable cause of any link to a crime. *Id. Brown's* reference to *Herrington* was made in a discussion of the "good faith exception" to the exclusionary rule first stated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Because we find no abuse of discretion in the issuing judge's determination that probable cause existed to support the warrant, we need not reach the question of any "good faith exception" as a means of including the evidence. *See Laws,* 801 S.W.2d at 71.

■ *Herrington* holds only that the particular affidavit at issue in that case, which made absolutely no reference to a time frame, did not provide sufficient information upon which a probable cause determination could be made. *Herrington,* 697 S.W.2d at 901. In contrast to the *Herrington* affidavit, the affidavits in this case specifically noted the dates on which the affiants received information from the DEA and conducted surveillance of appellants' residence. In citing *Brown* and *Herrington,* appellants appear to be arguing that the affidavits' allegations concerning appellants' purchase of gardening equipment five months before the affidavits were sworn is too attenuated to support probable cause. In so doing, however, appellants ignore the fact that the officers received information from the DEA on November 2, 1989, which they acted upon and independently corroborated. For this reason, it was not unreasonable for Corporals Kindle and Swearengen to believe the marihuana growing equipment was still in appellants' home upon application and execution of the search warrant on November 8, 1989. *Cf. State v. Hodges,* 705 S.W.2d 585, 588 (Mo.App.1986) (probable cause existed to believe marihuana would still be in appellant's home five days after it had been seen there by informant). We find no error, and appellants's first subpoint is denied.

Appellants in their next subpoint contend that Corporals Kindle and Swearengen intentionally or recklessly omitted or misrepresented material facts indispensable to the trial court's determination of probable cause. Specifically, appellants contend that the affiants in asserting appellant Stephen Miller has two felony convictions omitted the "fact" that the convictions are actually a single conviction unrelated to drugs. They further contend that the affiants failed to include in their affidavits the "material" information that Hamilton Technology Corporation, the supplier of the growing equipment, advertised in ostensibly "legitimate" periodicals in addition to *High Times,* and that it sold merchandise to select "reputable" purchasers.

■ In order to attack the veracity of a search warrant affidavit in an attempt to void the warrant and exclude the evidence discovered through the search, a defendant must make a "substantial preliminary showing" that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978). Ommissions of fact may be misrepresentations if they cast doubt on the existence of probable cause. *United States v. Parker,* 836 F.2d 1080, 1083 (8th Cir.1987), *cert. denied,* 486 U.S. 1025, 108 S.Ct. 2002, 100 L.Ed.2d 233 (1988). The preliminary showing required by *Franks* must usually be

made by a motion to suppress. *State v. Skaggs*, 650 S.W.2d 23, 25 (Mo.App.1983). Appellants made such a motion, alleging deliberate falsehood or reckless disregard for the truth; the motion was denied after argument and presentation of evidence at trial.

We find no evidence in the record, beyond appellants' bare assertions, that appellant Stephen Miller has only one prior felony conviction. The only evidence adduced is as follows:

Q: (BY APPELLANTS' COUNSEL): I think you stated in your affidavit that Mr. Miller had been convicted of two previous felonies; isn't that right?

A: (BY CORPORAL KINDLE): Yes.

Q: Is that true?

A: To my knowledge, it is, yes.

Q: Now do you have a copy of his arrest or conviction record?

A: I checked it just a while ago on the telephone again. I can give you what it has in the computer.

Q: Please do.

A: It has first degree tampering. Both of these was [sic] in Audrain County on August 18th of 1975. First degree tampering, which was listed as a felony, and left the scene of an accident, which was a felony; and for both of them, the disposition showed jail in lieu of bond.

Q: Does it show convictions on both those?

A: Under disposition is what it—was where it would show; and it says, "Jail in lieu of bond."

Q: Neither of those offenses have [sic] anything to do with marihuana; do they?

A: No, sir.

Q: Was this your only source of the information regarding the two alleged convictions?

A: Yes.

Appellants have failed to demonstrate the affidavits' assertions were false, much less intentionally or recklessly so; mere allegations do not suffice. *State v. Leisure*, 772 S.W.2d 674, 683 (Mo.App.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990).

Appellants claim further error in the affiants' failure to include in their affidavits information that Hamilton Technology Corporation, the supplier of the growing equipment, advertised in ostensibly "legitimate" periodicals in addition to *High Times*, and that it sold merchandise to select "reputable" purchasers.

Even if the affiants knew of the facts allegedly omitted from the affidavits, the facts are not significant when the affidavits are viewed as a whole. The relevant inquiry is the totality of the circumstances surrounding the warrant, *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548, and the circumstances were in this case sufficient to support the trial court's determination of probable cause. Further, we find that the affidavits supplemented with the alleged omissions would still have supported a finding of probable cause to issue the warrant. Appellants' second subpoint is denied.

In their third and final subpoint, appellants contend the application for the search warrant and the warrant itself fail to conform to the requirements of § 542.276 RSMo (Supp.1990). First, appellants cite §§ 542.276.2(5) and 542.276.10(3), arguing that (1) the application failed to state facts sufficient to show probable cause for the issuance of the warrant; and (2) the warrant was itself invalid because issued without probable cause. Second, appellants allege deficiency on the face of the warrant for its failure to state a time of issuance as required by § 542.276.6(3). For the reasons discussed in our consideration of appellants' first two subpoints, we reject appellants' arguments concerning the application and warrant's alleged failure to show probable cause.

Similarly, we reject appellants' argument that the warrant be quashed for failure to state a time of issuance. As an initial matter, we note respondent's argument that appellants have failed to preserve the issue for appellate review by failing to object at trial, on the basis of alleged deficiencies on the face of the warrant, to the admission of evidence derived

from the search. Appellants raised the issue in their motion to suppress and then made continuing, general objections at trial to all testimony relating to the evidence discovered upon execution of the search warrant. We recognize that when a motion to suppress evidence is denied and the evidence offered at trial, a defendant must at that time object to the admission of the evidence with a proper statement of reasons for the objection in order to preserve it for appellate review. *State v. Stidum*, 684 S.W.2d 448, 450 (Mo.App.1984). However, the motion here was taken with the case and argued only after presentation of evidence at trial. Because the trial court had not yet ruled on the motion, the rationale for requiring a specific objection at trial is misplaced. *Cf. State v. Fields*, 636 S.W.2d 76, 79 (Mo.App.1982) (purpose of rule is to give trial court an opportunity to reconsider its prior ruling against the backdrop of the evidence actually adduced at trial). We need not decide the issue, however, because whether we review only for plain error or consider the issue properly preserved, we find no reversible error.

▇ Section 542.276.6(3) RSMo (Supp. 1990) requires a search warrant to state the time and date of issuance; the warrant executed at appellants' home stated the date but not the time. However, because the warrant was applied for, issued, and executed on the same day, it cannot be said that the information contained therein was stale at the time of execution. Moreover, we find no cases indicating that omission of the time of issuance on a warrant's face invalidates the warrant when its execution and return are completed within ten days after the date of the application's making, as required by § 542.276.8. Further, § 542.276.10 lists seven deficiencies which invalidate a warrant, and the failure to state a time of issuance is not included. On these facts, we decline to require quashing of the warrant and suppression of the evidence derived therefrom. Appellants' third subpoint is denied.

The judgment of the trial court is affirmed.

CRANE and KAROHL, JJ., concur.

## APPENDIX "A"

### AFFIDAVIT

Comes now Greg D. Kindle, of age, being first duly sworn and upon his oath does depose and say:

1. That your affiant is a Corporal of the Missouri State Highway Patrol, having served as a Patrolman for nine (9) years and is currently assigned to the Missouri State Highway Patrol Troop B Marihuana Eradication Unit.

2. That your affiant, on November 2, 1989, received information from the United States Drug Enforcement Administration that one Steven Miller, later identified by your affiant as Stephen Wayne Miller, date of birth 11–03–55, of Rural Route 1, Box 179, Madison, Missouri, had received one shipment of merchandise from Worms Way on 6–17–89, weighing eleven (11) pounds and shipped via United Parcel Service. That your affiant also learned from the United States Drug Enforcement Administration that Miller had received ten (10) shipments of merchandise from Hamilton Technology Corporation, during the months of February and March, 1989 weighing from two (2) to thirty-six (36) pounds and shipped via United Parcel Service. That your affiant learned that this information came to the Drug Enforcement Administration Headquarters Desk in Washington, D.C. as a result of a United States subpoena served on all advertisers which have recently advertised for sale marihuana hydroponic growing equipment and marihuana seeds in a magazine periodical called "High Times".

3. That your affiant has determined that Hamilton Technology Corporation, 14902 S. Figueroa Street, Gardena, CA, is a company which advertises and has advertised for sale indoor hydroponic growing equipment and grow lights suitable for cultivation of marihuana indoors.

4. That your affiant has determined that Worms Way, 4620 S. State Road 446, Bloomington, IN, is a company which advertises for sale plant growing mediums

suitable for indoor use with cultivation of marihuana.

5. That your affiant knows personally that both Hamilton Technology Corporation and Worms Way advertise in the magazine periodical "High Times", and that "High Times" is a magazine periodical that specializes or features predominantly information about growing marihuana and products and technology suitable for growing marihuana, as well as articles and information promoting the growing of marihuana and concealing of same from law enforcement authorities.

6. That on November 7, 1989, your affiant in the company of Corporal J.L. Swearengen of the Missouri State Highway Patrol located the site of the residence of Stephen Wayne Miller at Route 1, Box 179, Madison, Missouri in rural Monroe County, Missouri, specifically being located in Section 6, Township 54, Range 12 West of the Fifth Principal Meridian in Monroe County, Missouri, and is the first residence east of the intersection of County Road 291 and County Road 289, being on County Road 289 on the South side of the road and being a white, wood-frame one story dwelling house with outbuildings and a mailbox bearing the number 179. That a white 1978 Ford Pickup truck bearing 1990 Missouri license number RJ2990 was observed in the driveway, and that said license number is registered with the Missouri Department of Revenue in the name of Stephen W. Miller and Birdine M. Miller. That a red 1982 Plymouth Two-door automobile bearing 1990 Missouri license SWT070 was also observed in the driveway, and said license SWT070 is registered to Birdine M. Ockert. That your affiant believes that Birdine M. Ockert is the same person as Birdine M. Miller, the wife of Stephen W. Miller. That your affiant observed two or more outbuildings on the premises described above with electric power lines connected to at least one of them, in addition to the house.

7. That your affiant, working with Corporal Swearengen, verified with Macon Electric Cooperative, Macon, Missouri, a rural electric cooperative association serving the area of the property described above, that Stephen W. Miller is the Cooperative's electric utility customer at the location of the site of the above described residence and outbuildings at Box 179, Rural Route 1, Madison, Missouri, that Stephen W. Miller has been such a customer for at least three years, and that an unusually large wattage of electricity has been metered to Stephen W. Miller at that location since February, 1989, with the 1989 wattage usage metered being nearly double that of either the 1987 or 1988 amounts metered. That your affiant has observed no apparent electrical appliance or apparatus visible from the county roadway that would use increased amounts of electricity.

8. That your affiant has determined that records indicate that Stephen W. Miller, described above, has two felony convictions in the year 1975.

9. That on November 7, 1989 when your affiant and Corporal Swearengen drove past the Miller residence described above, they both observed at least two large dogs and a beware of dog sign.

10. That your affiant is a law enforcement officer trained in indoor marihuana growing operations, and knows that indoor growing operations use large amounts of electricity to power indoor grow lights and hydroponic growing equipment, and further knows that indoor marihuana growers often use large dogs as warning devices and deterrents to trespassers and law enforcement officers.

11. That your affiant knows that information from Drug Enforcement Administration which has identified individuals who have placed orders with companies such as Worms Way and Hamilton Technology Corporation has resulted in indoor marihuana growing operations being located correctly in thirty-one of thirty-three cases in Missouri, for a success rate of ninety-four percent, and in a success rate in 100% of all such cases geographically located in the area served by Troop B of Missouri State Highway Patrol.

12. That your affiant believes that Stephen Wayne Miller is involved in the indoor cultivation of marihuana at the residence and outbuildings located at Rural Route 1, Box 179, Madison, Monroe County, Missouri as described above.

FURTHER AFFIANT SAYETH NOT.

/s/ Gregory D. Kindle
Affiant

Subscribed and sworn to before me this 8th day of November, 1989.

/s/ Betty Hitchcock
Clerk, Associate Division
Circuit Court of Monroe
County