**STATE of Missouri, Respondent,**

v.

**Lonnie A. DOBBS, Appellant.**

**No. WD 43826.**

Missouri Court of Appeals,
Western District.

March 3, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
April 28, 1992.

Mark H. Wissehr, St. Joseph, for appellant.

William L. Webster, Atty. Gen., Geoffrey W. Preckshot, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, C.J., and SHANGLER, TURNAGE, KENNEDY, BERREY, FENNER, ULRICH, BRECKENRIDGE, HANNA, SPINDEN and SMART, JJ.

TURNAGE, Judge.

Lonnie Dobbs was found guilty of possession of marijuana as prohibited by § 195.202, RSMo Cum. Supp.1991, after a bench trial and was sentenced to one year in the county jail. Dobbs contends a search warrant was issued without probable cause and that the evidence is insufficient to support the conviction. Affirmed.

Sometime prior to December 1, 1989, Trooper Bodenhamer of the highway patrol received information from Federal Drug Enforcement Administration agent Acker-

man that Dobbs had been receiving shipments from a company which advertised in High Times Magazine, a publication which carries ads encouraging the surreptitious growing and processing of marijuana.

Acting on this information, Trooper Bodenhamer went to the address to which the shipments had been directed, 5430 Frederick, Apt. D, St. Joseph, Missouri. Bodenhamer found a mail box at that address with the name Dobbs on it and checked the St. Joseph Light and Power company and found that the utilities at that address were listed in the name of Dobbs. Bodenhamer drove past the residence several times and observed two vehicles parked near the house which were registered with the Department of Revenue to Dobbs at the Frederick Ave. address. On November 17, 1989, Bodenhamer observed Dobbs on the premises of the house at 5430 Frederick.

On a visit to the Frederick address Bodenhamer approached the house to see if anyone was living there. Bodenhamer found the windows to be covered with cardboard on the inside but saw one window where the cardboard had slipped allowing Bodenhamer to get a view of the inside. Bodenhamer observed a blue glow in the house coming from the attic area. Bodenhamer said the room he could see did not have a ceiling and the rafters were visible and the light was coming from that area.

Bodenhamer thereafter executed an affidavit for the purpose of obtaining a search warrant for Apt. D at 5430 Frederick. The affidavit stated:

I, *Larry M. Bodenhamer*, being duly sworn, appear before the undersigned Judge authorized to issue warrants in criminal cases and make this Affidavit in Support of the Issuance of a Search Warrant, to search a tan, 1 story frame cabin like structure with an enclosed rear back porch located at 5430 Frederick, Number D, St. Joseph, for marijuana, cultivation device(s) and/or other drug paraphernalia, a controlled substance(s) and/or drug paraphernalia for the unauthorized administration or use of controlled substances or imitation controlled substances;

I believe that this property is now located upon the described person, place or thing based upon the following facts:

I, Larry M. Bodenhamer, have been a Missouri State Highway Patrol Trooper for over 14 years, have been assigned to the Division of Drug & Crime Control for 4 years, and have been assigned to the Buchanan County Drug Strike Force since its inception. During this period of time, I have assisted in the execution of numerous drug-related search warrants, have participated in many drug-related investigations, and have arrested scores of individuals as a result of these activities.

Based on my experience in drug-related investigations, my experience as a law enforcement officer, and the facts set forth below, it is my opinion that the aforementioned contraband will be located on the premises as stated above.

On November 15, 1989, DEA Agent Kenneth Ackerman (St. Louis, Missouri office) contacted me and provided me with a list of subjects, in the St. Joseph area, who had obtained (via UPS deliver) merchandise from suppliers of hydroponic goods. The advertisements for these same suppliers and goods are published in the "High Times" newsletter (copies of same are attached hereto as Exhibit A). These same advertisements encourage the surreptitious growing and processing of marijuana to avoid detection by law enforcement officers.

DEA Agent Ackerman told me that the aforementioned list had been provided by UPS pursuant to a federal subpoena requested by the DEA's Marijuana Task Force. UPS officials indicated, pursuant to that subpoena, that these merchandisers were, in fact, advertisers in High Times Magazine and that these listed individuals had received goods from those merchandisers (via UPS).

One of the names on the list was "Lonnie A. Dobbs, 5430 Frederick, Number D, St. Joseph, Missouri". The DEA list indicates that Dobbs received 3 shipments from "Hamilton Technology Corporation" (one of the aforementioned adver-

tisers/merchandisers) on—March 29, 1989 (2 separate packages weighing 23 lbs. and 6 lbs. at a total cost of $80.00); May 19, 1989 (3 separate packages weighing 9 lbs., 2 lbs., and 3 lbs. at a total cost of $323.95); and June 2, 1989 (1 package weighing 25 pounds, cost unknown).

DEA Agent Ackerman told me that the DEA list has been disseminated to various law enforcement agencies (both federal and State) and said agencies have had success in obtaining both search warrants, arrests and prosecutions thereafter. At the State level, I personally know of 33 confirmed marijuana cultivation cases made in reference to individuals who had been named. All of these cases were prepared in Missouri, by the Highway patrol, since September of 1989, pursuant to search warrant. Numerous other cases were made by "Consent Searches" after individuals who had been named were approached by authorities.

On November 17, 1989, I personally went to 5430 Frederick, Number D, St. Joseph, Missouri, and confirmed that Lonnie Dobbs was listed on the mail box as the resident of the afore-described structure. In addition, a DOR computer check of the 2 vehicles parked immediately outside the structure (a green, 1973 Chevrolet 4–door bearing Mo. license KRX–666; and a brown, 1979 Jeep bearing Mo. license N3B–490) both checked to Lonnie Dobbs with the aforementioned adress[sic]. On this same date, the utilities at the structure also checked to Mr. Dobbs. Another item that I noted was that all of the windows, at the structure, had cardboard secured over all apertures from the inside.

On November 21, 1989, at 9 pm, Trooper Brian Jamison and I set up a surveillance on the structure in an attempt to log traffic to assist in the obtaining of a search warrant. After approximately 45 minutes, we approached the structure to determine if anyone was still living there since no vehicle was seen in the area. At that time, we observed through a gap between the cardboard and the window facing of a window on the west side (toward the rear of the structure), a bluish glow from the attic portion of the interior. No other lights were visible at this time nor at any prior time that we were there.

I peered at the glow for several minutes to determine its source and I was able to ascertain that it was not a television set nor a normal light bulb. I have seen similar effects in the past in reference to ultraviolet growing apparatus used in the cultivation of marijuana. I would estimate that I have viewed the same effect on at least 4 occasions. The glow simply does not look like normal lighting or any other lighting that I have viewed except ultra violet[sic] lighting.

In fact, Exhibit A lists the type of lighting to which I am referring. Further, I observed the lighting coming from the attic area of this structure which is consistent with my training that marijuana is habitually grown by cultivators in those areas, during cold weather, because the heat in a structure tends to rise.

A search warrant was issued and the house at 5430 Frederick, Apt. D was searched. The search revealed 37 growing marijuana plants under growing lights in plastic trays with a hydroponic growing system. An amount of marijuana sealed in vacuum packed bags was also discovered in a refrigerator. Laboratory analysis found that a little over 48 grams of marijuana had been seized from the house during the search.

Dobbs first contends that the court erred in failing to sustain his motion to quash the search warrant and suppress the evidence found pursuant thereto. The requirements of an affidavit to support a search warrant are set out in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *Gates* had the following to say about the duty of the issuing magistrate and a reviewing court:

The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before

him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Id.* at 238, 103 S.Ct. at 2332.

The facts in this case are remarkably similar to those considered in *State v. Shuck*, 800 S.W.2d 49 (Mo.App.1990). The affidavit in this case is virtually identical to the affidavit in *Shuck* and the evidence produced to corroborate the information received from the DEA in this case is quite similar to that in *Shuck*. Dobbs relies upon the distinction in this case that when Bodenhamer checked the electric usage of the Dobbs house he did not find that it was different from neighboring houses. Offsetting this difference is the fact that in this case Bodenhamer observed the glow from the growing lights when there was no such evidence in *Shuck*.[1]

Bodenhamer was possessed of information that merchandise ordered from suppliers of hydroponic goods who advertised in High Times were delivered to the Frederick address. Bodenhamer corroborated the information given him by finding that utilities were registered in the name of Dobbs, the name Dobbs appeared on the mail box, and two vehicles registered to Dobbs at that address were parked near the house.

Bodenhamer had personal knowledge that 33 marijuana cultivation cases had been established with information similar to what he had been supplied concerning the hydroponic growing equipment sold by advertisers in High Times. On checking the house Bodenhamer found all of the windows covered with cardboard from the inside but he was able to see through a small opening and observe a blue glow from the attic. He had seen similar light given off by ultraviolet growing apparatuses used in the cultivation of marijuana. He observed the light coming from the attic area and from his training knew that marijuana is habitually grown in the attic area during cold weather because the heat in the structure rises.

■■■ The duty of this court as stated in *Shuck* is "to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 51 (citing *Gates* 462 U.S. at 238, 103 S.Ct. at 2332). Under *Gates*, this court is not to perform a de novo review of the affidavit. The judge's determination of probable cause is to be given great deference by this court and a grudging or negative attitude by a reviewing court toward affidavits supporting a warrant is inconsistent with the Fourth Amendment's strong preference for searches to be conducted pursuant to warrant. 462 U.S. at 236, 103 S.Ct. at 2331. Further, *Gates* stated that courts should not interpret affidavits in a hypertechnical rather than a commonsense manner in order to invalidate warrants. *Id.* Further, the affidavit in this case is quite similar to that in *State v. Miller*, 815 S.W.2d 28 (Mo.App.1991), which was found to be sufficient.

■■■ From the facts set out above it is evident that the judge had a substantial basis on which to conclude that probable cause existed that there was evidence of a crime to be found at the Frederick address. That is all that is required. Viewing the affidavit in the manner required by *Gates*, the court correctly overruled the motion to quash the search warrant and the evidence found thereby.

■■■ Dobbs contends there was insufficient evidence to support the conviction.

---

1. For the first time Dobbs contends on this appeal that evidence that Bodenhamer observed the ultraviolet light was inadmissible because Bodenhamer had no right to approach the house and committed an illegal search when he looked through the window. This contention was not presented to nor ruled upon by the trial court. Allegations of error cannot be considered on appeal unless they were presented to or expressly decided by the trial court. *State v. Toney*, 680 S.W.2d 268, 275[8, 9] (Mo.App.1984). Further, at trial Bodenhamer testified without objection about looking in the window with such evidence to be considered on both the motion to suppress and on the merits.

The scope of review in a court-tried case is the same as that in a jury-tried case and that is to determine if there was substantial evidence to support the court's finding. *State v. Turnbough*, 604 S.W.2d 742, 744[1] (Mo.App.1980). In reviewing the evidence, all evidence and inferences reasonably drawn therefrom which are favorable to the verdict are accepted as true and all contrary evidence is disregarded. *Id.*

 Dobbs contends that the sufficiency of the evidence is to be measured by the circumstantial evidence rule. In order for the circumstantial evidence rule to apply the case must be founded entirely upon circumstantial evidence. *State v. Nickens*, 701 S.W.2d 478, 486[9] (Mo.App.1985). Here, there was direct evidence from Bodenhamer concerning the marijuana and growing equipment which was found in the house. For that reason the circumstantial evidence rule does not apply.

 From the evidence the court could reasonably draw the inference that Dobbs either lived in the house or had exclusive possession thereof. There was no evidence that anyone else was seen around the house, the sole name Dobbs was on the mail box, the utilities were in his name, and the cars parked there were registered to him at that address. In addition, he was seen at the house.

The court could have reasonably inferred that Dobbs had exclusive possession of the apartment searched. In *State v. Wiley*, 522 S.W.2d 281, 292[20] (Mo. banc 1975), the court stated "[i]n narcotics or controlled substance cases, the law has developed the policy that a person in exclusive control of the premises will be deemed to have possession and control of the substance found on the premises."

The evidence was sufficient to find that Dobbs was in exclusive possession of the premises and with the finding of narcotics thereon, the evidence was sufficient to support the conviction.

The judgment is affirmed.

LOWENSTEIN, C.J., P.J., and SHANGLER, KENNEDY, FENNER, ULRICH, BRECKENRIDGE, HANNA, SPINDEN, and SMART, JJ., concur.

BERREY, J., dubitante.