The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Lewis John ATLEY, Defendant-Appellee.

No. 85SA204.

Supreme Court of Colorado, En Banc.

Nov. 10, 1986.

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy, Michael J. Milne, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

Arthur M. Schwartz, P.C., Michael W. Gross, Denver, for defendant-appellee.

ERICKSON, Justice.

Lewis John Atley and Mary Ann Stewart were charged in an information with possession, manufacture, and possession with the intent to manufacture psilocybin, a schedule I controlled substance, and conspiracy to manufacture, possess, and possess with intent to manufacture psilocybin. §§ 12–22–309, 5 C.R.S. (1973) and 18–18–105, 8 C.R.S. (1973). Lewis John Atley was Mary Ann Stewart's boyfriend. Counsel for Atley filed a motion to suppress asserting that the affidavit supporting the issuance of the search warrant failed to establish probable cause. The motion was granted and the prosecution has filed an interlocutory appeal. We reverse and remand for further proceedings consistent with this opinion.

I.

Vivian Giron (manager) was responsible for the management of a residential apartment condominium complex in Northglenn, Colorado. On March 27, 1984, she went to apartment I–310 in response to a complaint about a water leak. No one was in the apartment when she arrived and she entered the apartment with a pass key. She had leased the apartment to Mary Ann Stewart for residential use. When she entered the apartment she found that apart from a small black and white television set and one chair there was no furniture, no

clothes were in the apartment, and no food stuff or other indicia of residential use was present. However, she observed fifteen styrofoam coolers lined with tinfoil on the apartment floor and saw a number of do-nut-shaped objects or pads on racks inside of the coolers that were covered by a mold-type substance. She also saw approximately twenty cases of canning jars and three or four coolers containing soil. The air conditioner in the apartment was operating at full capacity during the month of March and a humidifier was in the apartment and was in service. Three ultraviolet grow lights were in the apartment and one was in use. The apartment was cold, humid, and had a musty odor.

The manager called the Northglenn Police Department and related her observations to Detective Russell VanHouten. He in turn contacted Sergeant Ray Smith of the Boulder Police Department who had experience with investigations involving the cultivation and manufacture of psilocybin mushrooms. As a result of his conversation with Sergeant Smith, Detective Van-Houten prepared an affidavit for the issuance of a search warrant. The affidavit, in addition to the facts provided by the manager, set forth:

> The affiant informs the Court that pursuant to this investigation, he did contact Sgt. Ray Smith, employed as a commissioned police officer by the Boulder, Colorado Police Department. The affiant advises that Sgt. Ray Smith has previously been involved in police investigations concerning the manufacture/cultivation of psilocybin mushrooms. The affiant further relates that he (the affiant) did advise Sgt. Ray Smith of the information provided by Ms. Giron. Sgt. Ray Smith did advise the affiant that the description provided by Ms. Giron describing the items which she found located in the apartment located at 11849 North Washington Street, Apt. I–310, was consistent with the cultivation/manufacture of psilocybin mushrooms.
>
> Sgt. Smith stated that he has had occasion to examine two psilocybin mushroom "farms." Sgt. Smith informed the affiant that the manufacture/production

of psilocybin mushrooms requires an environment which has a consistent temperature below 60 degrees Farenheit. Further, Sgt. Smith related that the growing environment for psilocybin mushrooms requires a high degree of humidity, and the use of artificial growing light to enhance the development of the mushrooms.

> ·Sgt. Ray Smith related that the styrofoam containers lined with tin foil were in all likelihood lined with tin foil to enhance the collection of light on the psilocybin mushroom growing cultures. Sgt. Smith described the growing process of psilocybin mushrooms indicating that the psilocybin mushroom spores are placed on a culture pad which must remain moist. Sgt. Smith stated that psilocybin mushroom growers often maintain moisture by using rice and/or mold on the growing cultures. Sgt. Smith also informed the affiant that once the psilocybin mushroom has began [sic] to grow it is then removed from the growing culture and placed in a small amount of dirt located in a jar. These jars are then maintained in a light-free environment during the growing process. Sgt. Smith stated that once the mushroom has grown to an appropriate size it is then removed from the growing jar and then dried in an oven for use.

Based on the affidavit, a search warrant was issued and the items set forth in the affidavit were found and seized together with psilocybin. In our view, the affidavit was sufficient to establish probable cause and the trial court erred in suppressing the evidence seized pursuant to the warrant.

## II.

Search warrants provide constitutional protection of the right of privacy, but do not require as a foundation an affidavit that establishes guilt beyond a reasonable doubt. *See People v. Whisenhunt*, 173 Colo. 109, 476 P.2d 997 (1970). "Accordingly, the task of the magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence

of a crime will be found in a particular place." *People v. Pannebaker,* 714 P.2d 904, 907 (Colo.1986). Probable cause therefore is measured in terms of reasonableness and not mathematical certainty. *People v. Hearty,* 644 P.2d 302 (Colo.1982). Courts reject hypertechnical interpretations of warrants and their underlying affidavits because a "grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). Vivian Giron was a citizen-informant, *People v. Glaubman,* 175 Colo. 41, 485 P.2d 711 (1971), and her factual report to the Northglenn police officer is presumed credible. *People v. Ball,* 639 P.2d 1078 (Colo.1982); *People v. Henry,* 631 P.2d 1122 (Colo.1981). In our view, the affidavit in this case was fact specific and contained sufficient allegations of fact to cause a person of reasonable caution to believe that contraband or material evidence of criminal activity was located in the apartment. *People v. Hill,* 690 P.2d 856 (Colo.1984); *People v. Ball,* 639 P.2d 1078 (Colo.1982).

The trial court found that, because the observations of Ms. Giron were as consistent with a lawful mushroom growing operation as with an unlawful enterprise, the affidavit was insufficient to establish probable cause to believe that the items to be seized were in fact contraband. The court noted that Sergeant Smith characterized the information relayed by Ms. Giron as merely "consistent with" the cultivation of psilocybin.

The totality of the information contained within the four corners of the affidavit established probable cause and supported the issuance of a search warrant. *People v. Pannebaker,* 714 P.2d at 907 (Colo.1986); *People v. Lindholm,* 197 Colo. 270, 591 P.2d 1032 (1979). The apartment was being used solely to grow mushrooms, despite the tenant's representation that the apartment was to be her residence. None of the normal indicia of residential use were present. No clothes, furniture of consequence, or food were present to indicate residential use. The quantity and nature of the items discovered in this apartment unit belie defendant's assertion that Ms. Giron's observations were consistent with lawful mushroom cultivation.

The order of the district court suppressing the evidence seized pursuant to the execution of the warrant is reversed and the case is remanded for further proceedings consistent with this opinion.