The PEOPLE of the State of Colorado, Petitioner,

v.

Damian J. ALTMAN, Respondent.

No. 96SC837.

Supreme Court of Colorado, En Banc.

June 8, 1998.

Rehearing Denied June 29, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Paul Koehler, Assistant Attorney General, Criminal Enforcement Section Denver, for Petitioner.

The Tegtmeier Law Firm, P.C., Richard Tegtmeier, Bradley S. Taylor, Colorado Springs, and Nancy J. Lichtenstein Denver, for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari [1] to review issues in *People v. Altman,* 940 P.2d 1009 (Colo.App.

---

1. We granted certiorari on the following two issues: (1) Whether the court of appeals properly held that the search warrant of the respondent's home was not supported by probable cause because the warrant affidavit did not contain facts "clearly indicating" illegal activity; and (2) Whether the court of appeals properly held that an officer could not have executed the search warrant of the respondent's home with an objec-

1996), concerning application of the good faith exception to the exclusionary rule. We now conclude that the affidavit supporting the search warrant in this case was more than a "bare bones" affidavit. Thus, the officer reasonably relied upon the warrant in conducting the search, and the evidence is admissible under the good faith exception to the exclusionary rule. Accordingly, we reverse the decision of the court of appeals and remand the case with directions to reinstate the district court's ruling.

## I.

On June 13, 1994, two federal Drug Enforcement Administration (DEA) agents reported to Officer Paul Landolt of the Fort Collins Police Department that two white males had purchased hydroponic growing equipment, of the type commonly used for indoor marijuana cultivation, and had transported the equipment in a rental car to 508 Maple Street in Fort Collins.

Officer Landolt commenced an investigation, and over the next three weeks uncovered additional facts. The rental car used to transport the growing equipment had been rented for ten days, beginning June 10, to Robert Newman who listed an address on Yount Street in Fort Collins. When one of the DEA agents, acting undercover, called the telephone number Newman had given to the rental car agency, a man identifying himself as Newman told the agent that he now lived at 508 Maple. Landholt observed the rental car in the driveway at 508 Maple on June 14 and June 15. During the course of his investigation, Landolt also observed that Newman had two cars of his own registered in his name, which were parked at the Maple Street residence.

Landolt checked the utility records for 508 Maple and discovered that respondent Damian Altman had been paying the bills since October of 1993. Landolt learned that since the utilities at that address had been under Altman's name, the electrical usage had been two to three times higher than that for sur-

rounding residences and two to three times higher than the previous resident's usage.

Landolt is a fourteen-year veteran of the Fort Collins Police Department with over five years' experience in the Special Investigations Unit and training at the federal, state and local level in the area of controlled substance investigations. He has investigated indoor marijuana cultivation on several previous occasions. Based on the purchase of this indoor growing equipment in June at the height of the outdoor growing season, the high electrical usage, and the suspicious circumstances surrounding the apparently unnecessary use of a rental car, Landolt suspected that marijuana was being cultivated at the Maple Street residence.

Landolt continued his investigation. He checked police department records and found that Altman had several prior contacts with Fort Collins police. Landolt also discovered an outstanding warrant for Altman's arrest on misdemeanor charges.[2] Landolt checked city sales tax records to ascertain whether a business was registered at the Maple Street address that might account for the high electrical usage. No such record existed.

Believing that there was probable cause to search the Maple Street residence for evidence of a marijuana growing operation, Landolt executed an affidavit in support of a search warrant. The affidavit related the facts we have set forth above.

The magistrate agreed that the affidavit established probable cause and issued a search warrant for 508 Maple. A search of the premises uncovered, among other things, a 96-plant marijuana "farm" in the basement of the residence, operating on hydroponic technology with moving grow lights mounted on ceiling tracks and a carbon dioxide producing machine. On the ground floor, police found psilocybin mushrooms (a Schedule I controlled substance), some 268 grams of marijuana, additional marijuana plants growing in a closet and various documents connecting Altman to the residence.

---

tively reasonable reliance on the validity of the warrant.

**2.** Although these charges did turn out to be drug related, this fact was not reported in Landolt's affidavit.

The state charged Altman with cultivation of marijuana, a class 4 felony under section 18–18–406(8)(a), 6 C.R.S. (1997), and unlawful possession of a Schedule I controlled substance, a class 3 felony under sections 18–18–405(2)(A)(I) and 18–18–203, 6 C.R.S. (1997). Prior to trial, Altman moved to suppress the evidence from the search alleging that Landolt's affidavit did not establish probable cause to search the residence at 508 Maple Street.

The trial judge assigned to the case was, coincidentally, the magistrate who had issued the warrant. After hearing argument on the matter, and upon further reflection, the judge decided that the facts in the affidavit, while creating a certain amount of suspicion, did not rise to the level of probable cause. The judge did not suppress the evidence, however, because of the good faith exception to the exclusionary rule for warrant-based searches contained in section 16–3–308, 6 C.R.S. (1997).

The court convicted Altman of both charges in a bench trial, and Altman appealed his conviction to the court of appeals. Altman argued that the good faith exception was inapplicable because Landolt's affidavit was so lacking in indicia of probable cause as to render the officers' reliance on it objectively unreasonable.

The court of appeals held that under the totality of the circumstances the affidavit did not contain any facts clearly indicating that Altman might have been engaged in criminal activity, and that the degree of suspicion related to the non-criminal activity described was insufficient to establish probable cause. The court further held that the good faith exception to exclusion was inapplicable in this case because this was a "bare bones" affidavit, devoid of facts indicating current or previous illegal drug activity. We granted certiorari to consider the propriety of this ruling and now reverse.

## II.

■ The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution protect persons from unreasonable searches and sei-zures and prohibit the issuance of a search warrant except upon probable cause supported by oath or affirmation particularly describing the place to be searched and objects to be seized. *See* U.S. Const. amend. IV; Colo. Const. art. 2, § 7. To establish probable cause, an affidavit in support of a warrant must allege facts sufficient to cause "a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched." *People v. Quintana,* 785 P.2d 934, 937 (Colo. 1990). The analysis of probable cause under both the state and federal constitutions looks at the totality of the circumstances. *See People v. Turcotte-Schaeffer,* 843 P.2d 658, 660 (Colo.1993) (noting that we have adopted the standard set by the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), for probable cause analysis under the Colorado Constitution). The probable cause standard does not lend itself to mathematical certainties and should not be laden with hypertechnical interpretations or rigid legal rules. *See People v. Leftwich,* 869 P.2d 1260, 1266 (Colo.1994); *People v. Atley,* 727 P.2d 376, 378 (Colo.1986). Rather, judges, considering all of the circumstances, must make a practical, common-sense decision whether a fair probability exists that a search of a particular place will reveal contraband or evidence of a crime. *See Atley,* 727 P.2d at 377–78.

■ Because there is no precise formula for determining probable cause, "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause." *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *see also Turcotte-Schaeffer,* 843 P.2d at 662 (acknowledging that the "facts here present a very close case of probable cause and a different issuing judge may have required more information before issuing a warrant"); *United States v. Cancelmo,* 64 F.3d 804, 807 (2d Cir.1995) (recognizing that "the question of whether probable cause existed in the instant case is a close one").

Here, the facts present a vivid illustration of the principle that reasonable minds may

differ on the issue of whether an affidavit sets forth sufficient information to comprise probable cause. A magistrate issued the warrant; that same judicial officer then concluded upon further review that the affidavit was insufficient.

We now address our certiorari questions in inverse order, beginning with the question of whether the good faith exception to the exclusionary rule protects the search at issue in this case.

### III.

#### A.

 The exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Leon,* 468 U.S. at 907, 104 S.Ct. 3405 (quoting *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)); *see also People v. Deitchman,* 695 P.2d 1146, 1160 (Colo.1985) (Dubofsky, J., concurring). It is police officers, not judges and magistrates, whose conduct we seek to influence through application of the exclusionary rule. *See Leon* 468 U.S. at 917, 104 S.Ct. 3405 ("Imposition of the exclusionary sanction is not necessary meaningfully to inform judicial officers of their errors, and we cannot conclude that admitting evidence obtained pursuant to a warrant while at the same time declaring that the warrant was somehow defective will in any way reduce judicial officers' professional incentives to comply with the Fourth Amendment.").

 Thus, the exclusionary rule is intended to deter improper police conduct and should not be applied in cases where the "deterrence purpose is not served, or where the benefits associated with the rule are minimal in comparison to the costs associated with the exclusion of probative evidence." *Deitchman,* 695 P.2d at 1160 (Dubofsky, J., concurring); *United States v. Chaar,* 137 F.3d 359, 361 (6th Cir.1998) (noting that the exclusionary rule is intended to deter police misconduct not to punish mistakes of judges and magistrates); *United States v. McKneely,* 6 F.3d 1447, 1454 (10th Cir.1993) (quoting

*Leon* that "penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations").

#### B.

Based on this rationale, Colorado created a statutory good faith exception to the exclusionary rule, codified at section 16–3–308, 6 C.R.S. (1997). It provides in pertinent part:

(2) As used in this subsection (1) of this section:

(a) "Good faith mistake" means a reasonable judgmental error concerning the existence of facts or law which if true would be sufficient to constitute probable cause.

. . . .

(4)(a) It is hereby declared to be the public policy of the state of Colorado that, when evidence is sought to be excluded from the trier of fact in a criminal proceeding because of the conduct of a peace officer leading to its discovery, it will be open to the proponent of the evidence to urge that the conduct in question was taken in a reasonable, good faith belief that it was proper, and in such instances the evidence so discovered should not be kept from the trier of fact if otherwise admissible. . . .

(b) It shall be prima facie evidence that the conduct of the peace officer was performed in the reasonable good faith belief that it was proper if there is a showing that the evidence was obtained pursuant to and within the scope of a warrant. . . .

§ 16–3–308, 6 C.R.S. (1997).

Our General Assembly enacted the statutory good faith exception following the Fifth Circuit's formal recognition of such an exception in *United States v. Williams,* 622 F.2d 830, 846–47 (5th Cir.1980), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981), but prior to the United States Supreme Court's decision in *Leon.*

The statute creates a presumption that an officer was acting in good faith if he or she was acting pursuant to a warrant. However, the ultimate question under the statute must

still be whether the officer undertook the search in the reasonable, good faith belief that it was proper. Using somewhat different language, in *Leon* the Supreme Court focused on whether the officer's reliance on the warrant was objectively reasonable. *See Leon*, 468 U.S. at 919, 104 S.Ct. 3405 (stating that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity").

We have concluded that the *Leon* standard and the statutory standard are "substantially similar." *Leftwich*, 869 P.2d at 1272. Hence, under either test, our inquiry must be whether it was objectively reasonable for the officer to rely upon the warrant. If no reasonable officer would have relied upon the warrant, then objective good faith is absent and the good faith exception offers no shelter.

Specifically, in *Leon*, the Court listed four circumstances in which an officer's reliance on a warrant would not be objectively reasonable: (1) where the issuing magistrate or judge was misled by a knowing or recklessly made falsehood; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the warrant is so facially deficient that the officers cannot reasonably determine the particular place to be searched or things to be seized; and (4) where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405 (quoting *Brown v. Illinois*, 422 U.S. at 610–611, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)).

It is this latter circumstance, also referred to as a "bare bones" affidavit, which is at issue in this case. The state claims that because the search was conducted pursuant to a warrant, good faith is presumed and the evidence against Altman is admissible.[3] Moreover, the state contends that Landolt's affidavit was not a bare bones affidavit and thus the officers' reliance on the warrant was objectively reasonable.

The question then is whether Landolt's affidavit was so deficient that no reasonable officer could have relied upon it as supporting a valid warrant. It is important to note at the outset that we are presuming an invalid warrant. Obviously, the good faith exception is not called into play when the warrant is found to be valid. The Court in *Leon* concluded that there is a middle ground between an affidavit setting forth probable cause and a bare bones affidavit: the middle ground where a police officer could have reasonably relied upon the validity of the warrant, because the affidavit was not "so lacking ... as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405; *see also Leftwich*, 869 P.2d at 1268 (determining that an affidavit was lacking in probable cause and then examining whether it might nonetheless merit the good faith exception); *United States v. Savoca*, 761 F.2d 292, 294–98 (6th Cir.1985) (finding no probable cause in the affidavit supporting a warrant but applying the good faith exception because the affidavit was not "so lacking in indicia of probable cause").

■ In this middle ground, an officer's reliance upon the warrant is protected, even if the warrant is later overturned. The officer's good faith in executing a signed warrant

---

3. The state takes issue with the following language in the court of appeals' opinion in the instant case:

> The fact that an issuing judge acted favorably on a warrant request "is of no moment in the determination of whether the officer acted with objective reasonableness because the question of reasonableness is to be judged as of the time of the warrant application and thus without consideration of the fact that the magistrate thereafter issued a warrant." *Altman*, 940 P.2d at 1014 (quoting *Leftwich*, 869 P.2d at 1269 n. 11). The state contends that this cannot be squared with *Leon* which accorded great significance to the fact that the magis-

trate signed a warrant. We do not agree with the state's contention that this language undermines *Leon*. Good faith is indeed affected by the magistrate's signing of a warrant. However, whether the officer's reliance upon the warrant was objectively reasonable is a different analysis. In the context of a bare bones affidavit contention, the court must look at the affidavit itself to determine whether an officer could have reasonably relied upon it as supporting the issuance of a warrant. Thus, it is accurate to say that the actual issuance of the warrant plays only a peripheral role in that analysis.

can only be impugned, for purposes of our analysis, by a showing that it would have been "entirely unreasonable" for the officer to have believed that the affidavit supported issuance of a warrant. *Leon* directs that an affidavit can indeed support the good faith exception even if it is later determined to be insufficient, provided that it is not so deficient that no reasonable officer could have relied upon it.[4] *See* 1 Wayne R. LaFave, *Search and Seizure*, § 1.3(f), at 86 (3d ed. 1996) (averring that "surely the Court would not have gone to the bother of adopting this new and controversial doctrine if it merely gave courts an alternative basis for reaching a conclusion already available to them under [*Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317 (1983) ]").

Police officers are not appellate judges. The determination by an appellate court that a warrant is invalid does not mean a police officer's reliance upon that warrant was objectively unreasonable. The courts encourage officers to obtain warrants before invading individual privacy, and it is police misconduct that the exclusionary rule seeks to deter. Hence, both by operation of precedent and common sense, a warrant that has failed appellate scrutiny can nonetheless form the basis for good faith execution by a reasonable police officer. Only if no reasonable officer would have relied upon that warrant should we defeat that officer's good faith and hence the good faith exception.

### C.

██ We now turn to an examination of Landolt's affidavit to determine whether it was, in fact, a bare bones affidavit that would render the good faith exception inapplicable. As we have previously stated, this test considers:

> whether a reasonably well-trained officer in [the officer's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the

case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressure, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment.

*Leftwich*, 869 P.2d at 1269 (quoting *Malley v. Briggs*, 475 U.S. 335, 345–46, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

██ A bare bones affidavit is said to contain wholly conclusory statements devoid of facts from which a magistrate can independently determine probable cause. *See, e.g., United States v. Laury*, 985 F.2d 1293, 1311 n. 23 (5th Cir.1993); *United States v. Medlin*, 798 F.2d 407, 409 (10th Cir.1986). In *Leftwich*, this court rejected application of the good faith exception because the underlying affidavit was bare bones in nature. *Leftwich*, 869 P.2d at 1270. *Leftwich* concerned an unidentified informant who made only vague allegations of both criminal and noncriminal activity. An anonymous letter sent to police alleged that a person named "Jeff" of a certain physical description was a drug dealer. The letter described his car and stated that he was a student in Boulder. The only specifics regarding criminal activity were that drugs were "collected at a music store located in Kansas City just North of the intersection of 39th and Main" and then taken to Boulder. *Id.* at 1264. The police officer was only able to corroborate innocuous, easily obtainable facts reported by the unknown informant. We also noted that the verified facts alone were not the least suspicious. More importantly, and of paramount concern to this court in *Leftwich*, was the complete lack of a nexus between the facts as reported in the affidavit and the defendant's

---

4. In a footnote in *Leftwich* we noted that because of the overlapping standards of reasonableness for probable cause and reasonableness for an officer's reliance on the warrant, the "vast majority" of cases lacking in probable cause would also be poor candidates for the good faith exception. We did not, however, declare that an affidavit that is ultimately determined to lack probable cause could never be found sufficient to invoke the good faith exception.

residence. We noted that "[n]owhere in the letter does the informant indicate that Leftwich's residence is the site of alleged drug activity." *Id.* at 1267. We emphasized the lack of "a substantial basis to determine if probable cause existed *to search Leftwich's residence." Id.* at 1268 (emphasis in original). Thus, we concluded that the affidavit contained wholly conclusory allegations of an unsubstantiated informant and a reasonable officer should have known that probable cause was lacking to search Leftwich's residence.

Here, by contrast, the affidavit does not rest upon unsupported allegations of criminal activity made by an unknown informant. Indeed, all facts recited in the affidavit were observed by law enforcement officers. There is also no problem connecting the evidence to the place to be searched. The DEA agents observed firsthand the transport of the hydroponic equipment in a rental car to 508 Maple Street. Landolt checked the utility records for evidence of excessive electrical usage and also checked city records for a legitimate business purpose.

■ In *Leftwich* driving to Kansas City during spring break was not a suspicious activity absent a reliable informant's allegation attaching significance to this fact. Here hydroponic growing equipment and excessive electrical usage can be inherently suspicious activities known to indicate indoor marijuana cultivation. *See, e.g., Turcotte–Schaeffer,* 843 P.2d at 660 (noting that district court suppressed evidence because "[t]here is nothing in this case that supports any hint that [defendants were] involved in unlawful activity [such as, for example] surges of electricity"); *Quintana,* 785 P.2d at 939–40 (finding that excessive electricity usage partially supports affidavit for search warrant); *People v. Dunkin,* 888 P.2d 305, 309 (Colo.App.1994) (holding that daily one-hour visits to house with no apparent residents, covered windows, high electrical consumption and officer's opinion supported probable cause); *People v. Beckstrom,* 843 P.2d 34, 35 (Colo.App.1992) (stating that defendant's purchase of hydroponic equipment prompted DEA officers to seek consent to search for indoor marijuana cultivation); *People v. Wilson,* 819 P.2d 510, 515 (Colo.App.1991) (holding that high electrical consumption, frequent visits to and from office, condensation on covered windows and officer's opinion constituted probable cause); *United States v. Robinson,* 62 F.3d 1325, 1331 (11th Cir.1995) (finding probable cause to search based upon purchase of hydroponic growing equipment and high pressure lights with cashier's check, excessive use of electricity and fact that defendant lived in expensive home yet did not pay state income taxes); *People v. Miller,* 815 S.W.2d 28, 30 (Mo.Ct. App.1991) (holding that DEA tip concerning defendant's purchase of hydroponic equipment, excessive electrical usage, large dogs on premises, non-drug related felony convictions and past success with similar DEA tips supported probable cause).

■ The fact that the affidavit details activities that are lawful does not cause it to be a bare bones affidavit. A combination of otherwise lawful circumstances may well lead to a legitimate inference of criminal activity. *See, e.g., Gates,* 462 U.S. at 243 n. 13, 103 S.Ct. 2317 ("[I]nnocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands."); *United States v. Muniz–Melchor,* 894 F.2d 1430, 1438 (5th Cir.1990) ("A succession of otherwise 'innocent' circumstances or events ... may constitute probable cause when viewed as a whole.").

Of course, these same activities might also be consistent with innocent behavior, but probable cause deals with probabilities, not certainties. Here, the inference of criminal activity is "stronger than a mere uninformed and unconfirmed guess." *Massachusetts v. Upton,* 466 U.S. 727, 734, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984) ("It is enough that the [officer's] inference was a reasonable one and conformed with the other pieces of evidence making up the total showing of probable cause."). In a quite similar case, the Missouri Court of Appeals found that the purchase of gardening equipment, high electrical usage, ownership of large dogs and past non-drug related felony convictions supported probable cause to search for an indoor mari-

juana cultivation. *See Miller,* 815 S.W.2d. at 32. That court rejected a similar argument regarding innocent explanations:

> Appellants' argument that there are equally plausible, noncriminal explanations for appellants' purchase of gardening equipment, high utility usage, and ownership of dogs mischaracterizes the State's burden of proof in obtaining a search warrant. The State need not prove that marihuana was in fact being grown in appellants' home. Only the probability of criminal activity not a prima facie showing, is the standard of probable cause.

*Miller,* 815 S.W.2d at 32. *See also Turcotte– Schaeffer,* 843 P.2d at 660–61 ("In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty' but the degree of suspicion that attaches to particular types of noncriminal acts."); *Atley,* 727 P.2d at 377 (noting that informant's observations were also consistent with lawful mushroom growing, but added fact that defendant misrepresented to landlord that she lived at residence supported probable cause); *United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985) ("The fact that an innocent explanation may be consistent with the facts alleged ... does not negate probable cause.").

We must also give credence to Officer Landolt's experience and training in evaluating the significance of the facts reported in his affidavit relative to probable cause. *See, e.g., Henderson v. People,* 879 P.2d 383, 392 (Colo.1994); *Cancelmo,* 64 F.3d at 807; *Robinson,* 62 F.3d at 1331 n. 9. In *Cancelmo,* the affidavit supporting a search warrant reported only cryptic phone conversations between the defendant and a known narcotics dealer. *See Cancelmo,* 64 F.3d at 806–07. Nothing in these conversations would indicate to a lay person that drugs were being discussed. However, the officer asserted that the conversations regarding "chimneys" and "decks" were actually coded discussions about drug deals. *See id.* The court found that probable cause existed even though, as the dissent pointed out, the defendant was in the construction business. *See id.*

Giving credence to Landolt's experience and training and considering all of the facts indicating possible criminal activity, we find his reliance upon the affidavit to be reasonable. The principles and rationale behind the exclusionary rule do not support excluding evidence in a case where law enforcement officers act in reasonable and good faith reliance upon a warrant signed by a magistrate. *See Leon,* 468 U.S. at 921, 104 S.Ct. 3405 ("Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law."); *United States v. Murphy,* 69 F.3d 237, 241 (8th Cir.1995) (stating that "[o]rdinarily a police officer cannot be expected to question a judge's probable cause determination"); *United States v. Johnson,* 22 F.3d 674, 681 (6th Cir.1994) (holding that this was not "one of those rare cases in which an officer should have known that the search was illegal despite the magistrate's authorization"); *United States v. Cardall,* 773 F.2d 1128, 1133 (10th Cir.1985) (noting *Leon's* mandate that evidence be suppressed "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule").

Here, Officer Landolt's experience and training led him to believe that the purchase of equipment commonly associated with indoor marijuana cultivation at the height of the outdoor growing season, the high electrical usage, the potentially suspicious use of a rental car, and the defendant's previous brushes with the law all created a reasonable inference of marijuana cultivation. We do not view this as an affidavit so devoid of legitimate basis that no reasonable officer could have relied upon it as supporting a valid warrant. Rather, reliance was objectively reasonable, thereby confirming application of the good faith exception to the exclusionary rule.

## IV.

In our analysis, we have proceeded on the assumption that the affidavit was lacking in probable cause, and have concluded that nonetheless the good faith exception permits evidence obtained from the search to be admissible. Hence, we need not proceed beyond that assumption to a specific determination of whether probable cause existed. *See Leon,* 468 U.S. at 925, 104 S.Ct. 3405

("[C]ourts could reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith."); *Chaar*, 137 F.3d at 363 ("We need not engage in [a probable cause analysis] because there is a simpler and relatively non-speculative reason to conclude that this search was constitutional: the 'good-faith exception....' '"); *Cancelmo*, 64 F.3d at 807 ("[W]e need not resolve the issue [of probable cause] because we conclude that the good faith exception applies."); *McKneely*, 6 F.3d at 1453 ("We hold under the circumstances of this case, however, that [the existence of probable cause] is insignificant because the district court's finding on probable cause is trumped by the good faith exception...."); *United States v. Craig*, 861 F.2d 818, 820 (5th Cir.1988) ("Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the evidence under the good-faith exception of *Leon* will resolve the matter.").

In resolving this case on the basis of the good faith exception to the exclusionary rule, we address all matters genuinely at issue,[5] and decline to reach the probable cause question.

## V.

We conclude that the good faith exception to the exclusionary rule protects the officer's search pursuant to warrant. The affidavit was sufficient to support reasonable reliance. Hence, we reverse the court of appeals and remand with directions to reinstate the district court's order.

MARTINEZ, J., dissents, and MULLARKEY and BENDER, JJ., join in the dissent.

Justice MARTINEZ, dissenting:

The majority sanctions the use at trial of evidence procured as a result of a police search of Altman's home. *See* maj. op. at 1173. In my view, an examination of the affidavit underlying the search warrant in this case reveals that the affidavit failed to establish probable cause. Furthermore, following our holding in *People v. Leftwich*, 869 P.2d 1260 (Colo.1994), I believe that the affidavit lacked sufficient indicia of probable cause to render reasonable the belief in the existence of probable cause. Because the majority holds that the officer's reliance upon the warrant was objectively reasonable, and consequently approves the prosecution's use of this evidence, I respectfully dissent.

## I.

On July 7, 1994, members of the Fort Collins police department entered the home of Damian Altman and searched the premises. Conducted pursuant to a warrant, the search uncovered, among other things, marijuana, operating hydroponic growing equipment, psilocybin mushrooms and documents identifying the residence as Altman's home.

The search warrant in this case was based on the affidavit of Fort Collins police officer Paul Landolt. The affidavit presented the following salient facts. On June 14, 1994, two agents of the federal Drug Enforcement Agency (the "DEA") advised Landolt that two men purchased hydroponic growing equipment in Denver and transported it in a rental car to 508 Maple Street in Fort Collins. The car was rented to Robert Newman, and was observed parked in front of this residence. Two other cars registered to Newman were also observed in front of the residence. Landolt eventually learned that a person identifying himself as Newman claimed to live at the residence.

The affidavit also stated that Landolt had determined, through city utility records, that Altman resided at the residence, and that Altman had paid the utility bills for the residence since October of 1993. Landolt also learned that, since October of 1993, the electrical consumption at the home was two to

---

5. *See, e.g., State Eng'r v. Castle Meadows, Inc.*, 856 P.2d 496, 510 (Colo.1993) (Mullarkey, J., concurring in part and dissenting in part) (stating that because one issue was dispositive of case, second issue should not be reached and constituted dicta); *Espinoza v. O'Dell*, 633 P.2d 455, 469 (Colo.1981) (Erickson, J. concurring) ("It is not [the court's] province to give legal advice.").

three times higher than the previous resident's usage for the same period. Landolt determined that no business was registered at the address in question. Landolt learned further that Altman had "prior contact" with Fort Collins police, and that there was an outstanding warrant for Altman's arrest on misdemeanor charges. The affidavit did not identify the nature of these charges.

The affidavit set forth Landolt's experience with controlled substance investigations. The affidavit also related Landolt's belief that, because hydroponic growing equipment was "commonly used in the indoor cultivation of marijuana," and because of the "excessive use of electrical power" at the residence, there was probable cause to believe that cultivation of marijuana was in progress at the residence. Based on the affidavit as described above, a magistrate issued the search warrant. Altman was charged with cultivation of marijuana and unlawful possession of a Schedule I controlled substance (psilocybin mushrooms).

After a hearing on Altman's motion to suppress the evidence before the same judge who issued the search warrant, the trial judge reversed his earlier probable cause decision. The judge determined that the facts set forth in the affidavit did not amount to probable cause, and thus the warrant should not have been issued. The judge ruled that the affidavit failed to provide a substantial basis for concluding that the search would uncover evidence of illegal activity. However, the trial judge did not suppress the evidence because he determined that the evidence was seized by the officer as a result of a good faith mistake regarding the validity of the warrant. *See* § 16–3–308, 6 C.R.S. (1997). Altman was subsequently convicted.

The court of appeals agreed with the trial court's decision regarding the affidavit's failure to establish probable cause. *See People v. Altman*, 940 P.2d 1009, 1013 (Colo.App. 1996). The court of appeals did not believe, however, that the officer's belief in the validity of the warrant was objectively reasonable because the affidavit "was so lacking in probable cause that the executing officer should have known that the search of defendant's residence was illegal despite the magistrate's issuance of the warrant." *Id.* at 1014. Thus, the court of appeals reversed Altman's convictions. I would affirm.

## II.

The resolution of this case ultimately turns upon whether a reasonable police officer would determine that the facts set forth in the affidavit establish probable cause to believe evidence of illegal activity would be found in Altman's home. Therefore, I will first discuss the probable cause determination before turning to the reasonableness of the officer's reliance upon the warrant.

### A.

For purposes of both federal and state constitutional analysis, this court employs the probable cause standard announced in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317 (1983). *See People v. Pannebaker*, 714 P.2d 904, 907 (Colo.1986). Under this totality of the circumstances approach, a judge or magistrate examining an affidavit for probable cause should be guided by

> a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*People v. Turcotte–Schaeffer*, 843 P.2d 658, 660 (Colo.1993) (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. 2317). Probable cause exists where the affidavit "alleges facts sufficient to cause a person of reasonable caution" to believe that contraband or evidence of a crime will be found at the location to be searched. *Turcotte–Schaeffer*, 843 P.2d at 660.

In reviewing a judge's probable cause determination, we must give great deference to that determination. *See Leftwich*, 869 P.2d at 1266. We must, however, ensure that the judge or magistrate had a substantial basis for concluding that probable cause existed. *See id.* With these principles in mind, I now turn to the question of whether the affidavit in this case established probable cause to

believe that contraband or evidence of criminal activity would be found in Altman's home.

### B.

In essence, the affidavit alleged the following: (1) Altman delivered hydroponic growing equipment to his home, (2) Altman accomplished this delivery through the use of a roommate's rental car, (3) the consumption of electricity at Altman's home was unusually high, and (4) Altman had prior contact with the law, including an arrest warrant. Whether considered individually or collectively, these allegations do not provide a substantial, or even a reasonable, basis to believe that contraband or illegal activity would be found within Altman's home.

Initially, I note, as did the court of appeals, that the affidavit did not contain a specific allegation of criminal activity. *See Altman*, 940 P.2d at 1012 (affidavit "did not contain facts, such as statements by informants, clearly indicating that [Altman] was or might have been engaged in illegal drug activity"). For example, the affidavit did not allege that an officer had personally sighted marijuana on the premises. *See, e.g., People v. Juarez*, 770 P.2d 1286, 1292 (Colo.1989); *People v. McGill*, 187 Colo. 65, 68, 528 P.2d 386, 388 (1974); *People v. Oynes*, 920 P.2d 880, 883 (Colo.App.1996). Moreover, the affidavit did not contain an informant's tip that Altman was growing marijuana or other illegal substance on the premises. *See, e.g., Turcotte–Schaeffer*, 843 P.2d at 659; *People v. Quintana*, 785 P.2d 934, 935 (Colo.1990); *People v. Atley*, 727 P.2d 376, 377 (Colo.1986); *People v. McFall*, 672 P.2d 534, 536 (Colo.1983); *see also Leftwich*, 869 P.2d at 1263 (informant alleged "first-hand knowledge and eyewitness accounts" of defendant's drug dealing).

Both the U.S. Supreme Court and this court have recognized that corroboration of noncriminal behavior may support a finding of probable cause. *See Gates*, 462 U.S. at 244 n. 13, 103 S.Ct. 2317; *Leftwich*, 869 P.2d at 1268. We have also held that "verification of these noncriminal facts alone would not, however, be sufficient to find probable cause." *Turcotte–Schaeffer*, 843 P.2d at 661. Rather, probable cause exists only when such verification is considered along with reliable information about the defendant's illegal activities. *See id.; Leftwich*, 869 P.2d at 1268 n. 10 (noting that noncriminal activity was only a part of the basis for probable cause finding in *Turcotte–Schaeffer*); *see also Gates*, 462 U.S. at 243–46, 103 S.Ct. 2317 (innocent behavior corroborated specific allegation of criminal activity); *State v. Diamond*, 628 A.2d 1032, 1034 (Me.1993) ("*Gates* cannot ... stand for the much broader proposition that an affidavit based solely on noncriminal behavior can support a showing of probable cause.").

In this case, the affidavit contained no facts directly implicating Altman's residence in criminal activity. The majority contends, however, that hydroponic growing equipment and abnormally high electrical usage are "inherently suspicious activities" that raise an inference of criminal activity within the residence. Maj. op. at 1171. As I explain below, even assuming that this contention is correct, it falls far short of the probable cause standard.

Firstly, neither the purchase nor the use of hydroponic growing equipment is illegal. The equipment is used for the indoor cultivation of plants, including vegetables and other legal plants. That the equipment may also be used to further illegal ends does not transform it into contraband or an "inherently suspicious" item. Moreover, the abnormally high electrical use indicated nothing more than that Altman was perhaps using hydroponic equipment to grow something in the house.[1] These indications alone cannot support probable cause to believe that Alt-

---

1. I take care to use "perhaps" here because we cannot conclude, solely from the electrical records in this case, that Altman was using the hydroponic equipment that he delivered to his home. The electrical bills uncovered by Landolt showed that the electrical usage was abnormally high at the house beginning in October of 1993. Altman did not acquire this hydroponic equipment until June 13, 1994. The police searched his home on July 7, 1994. Clearly, the excessive electrical use at the house reported by Officer Landolt did not result from the use of this equipment. My broader point is that, even assuming that this equipment did occasion the electrical use, these facts alone do not give rise to probable cause to believe that marijuana cultivation is occurring on the premises.

man was engaged in illegal activity. As the North Dakota Supreme Court reasoned in a case very similar to this one:

> [T]he evidence must show a nexus between the home to be searched and the contraband sought. The contraband sought in this case was marijuana, not indoor growing equipment. The indoor growing equipment could be considered contraband only to the extent it was being used to grow marijuana. The nexus between the [defendants'] home and the probability of marijuana being found there was not supplied by either direct or circumstantial evidence.

*State v. Lewis*, 527 N.W.2d 658, 662 (N.D. 1995).[2]

Secondly, both the federal and state constitutions prohibit the issuance of a search warrant except upon probable cause. *See* U.S. Const. amend. IV; Colo. Const., art. 2, § 7. As the majority correctly notes, "probable cause deals with probabilities, not certainties." Maj. op. at 1171. However, suspicion, without more, does not amount to probable cause to search. An affidavit in support of a search warrant must establish the probability of finding contraband or criminal activity, not merely the possibility. *See State v. Carter*, 316 Or. 6, 848 P.2d 599, 603 (1993) ("Probable cause is necessary to support a warrant, not merely one possibility, among many.").

In this case, not only did the affidavit lack a specific and reliable allegation of drug related behavior, but, according to the affiant, the affidavit's crucial allegations were the transport of the hydroponic equipment and the increased electrical usage. These activities, as well as the use of a rental car, are just as consistent with legal behavior as with illegal behavior. "A fact that merely supports an inference that some other fact is possible—as one among the range of many other and different possibilities—does not support an inference that any specific one of

the possible facts is itself probable." *Id.* 848 P.2d at 602. Accordingly, although the cultivation of marijuana is one *possible* explanation for the purchase of the hydroponic equipment and high electric bills, it is not a *probable* one absent other significant facts implying illegal activity.

Thirdly, my research has uncovered no case in which a showing of probable cause was upheld on facts as bare as those alleged in this case. This result is hardly surprising in light of the preceding discussion of the standards for probable cause. To illustrate, the majority cites several cases in support of its assertion that hydroponic growing equipment and excessive electrical use are "inherently suspicious activities known to indicate indoor marijuana cultivation." *See* maj. op. at 1171. In none of these case do these "suspicious activities" form the sole basis for a probable cause determination. In all of these cases, the affidavit supplied additional vital information implicating the defendant in marijuana possession or cultivation. *See Turcotte–Schaeffer*, 843 P.2d at 659 (tip from reliable informant that he had purchased marijuana at defendant's home); *Quintana*, 785 P.2d at 935–36 (reliable and detailed tip regarding defendant's marijuana cultivation); *People v. Dunkin*, 888 P.2d 305, 309 (Colo. App.1994) (daily one-hour visits to apparently unoccupied house with covered windows); *People v. Wilson*, 819 P.2d 510, 514 (Colo. App.1991) (frequent visits to and from an office not used for any legitimate business, strange odor emanating from office, condensation on covered windows); *see also United States v. Robinson*, 62 F.3d 1325, 1331 (11th Cir.1995) (purchase of growing equipment with cashier's check for over $7000, defendant resided at expensive house but paid no state income tax, overhead thermal imaging equipment detected heat surges in suspicious areas of house); *State v. Miller*, 815 S.W.2d 28, 30–31 (Mo.Ct.App.1991) (residence guard-

---

**2.** Thus, the court held that the affidavit underlying the search warrant failed to establish probable cause. *See id.* at 663. Significantly, the affidavit in that case set forth considerably more facts than the affidavit in this case. To illustrate, the affidavit in *Lewis* alleged (1) defendants purchased indoor growing equipment, (2) the residence emitted excessive infrared heat, (3) high electrical use, (4) the windows were covered with styrofoam and fiberglass, and (5) an informant knew of a marijuana growing operation in the area. *See id.* at 661. The North Dakota Supreme Court has also rejected a finding of probable cause in another marijuana cultivation case whose facts do not materially differ from those in *Lewis*. *See State v. Ennen*, 496 N.W.2d 46 (N.D. 1993).

ed by large dogs which were typical of marijuana growers, tip from DEA similar to tips which resulted in discovery of criminal activity in large percentage of Missouri cases).

In contrast, the affidavit in this case contains no additional vital information connecting Altman with marijuana possession or cultivation. The affidavit's reference to Altman's prior contact with police and his outstanding arrest warrant on misdemeanor charges did not supply this connection. As the court of appeals explained, "The affidavit did not explain the nature of the charges and did not contain any information implicating the defendant in previous illegal activity related to the possession, cultivation, or sale of drugs." *Altman*, 940 P.2d at 1012–13. Furthermore, Altman's use of a rental car to transport the growing equipment provided no connection to illegal drug activity, especially in light of the fact that Altman had no apparent car of his own.

Thus, the affidavit failed to supply a substantial basis to believe that contraband or evidence of a crime would be found at Altman's home. The degree of suspicion surrounding the noncriminal behavior alleged in the affidavit did not rise to the level of probable cause to search. Accordingly, the trial court and the court of appeals were correct in ruling that the affidavit failed to show probable cause for the issuance of a search warrant in this case.

### III.

Our inquiry does not end upon determining that the affidavit underlying the search warrant failed to establish probable cause. The Supreme Court has held that evidence obtained pursuant to a defective search warrant should not be suppressed if the officer's reliance on the magistrate's determination as to the existence of probable cause was "objectively reasonable." *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405 (1984); *see also Leftwich*, 869 P.2d at 1269. The Supreme Court has also held, however, that an officer cannot manifest objective good faith if the affidavit is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Leon*, 468 U.S. at 923, 104 S.Ct. 3405 (citations omit-

ted). An affidavit so deficient is known as a "bare bones" affidavit. *See id.* at 926, 104 S.Ct. 3405.

One test for a bare bones affidavit is "whether the affidavit was sufficient to 'create disagreement among thoughtful and competent judges as to the existence of probable cause.' " *United States v. Hove*, 848 F.2d 137, 139 (9th Cir.1988) (quoting *Leon*, 468 U.S. at 926, 104 S.Ct. 3405); *see Diamond*, 628 A.2d at 1034; *see also Leftwich*, 869 P.2d at 1269 (a bare bones affidavit is "so lacking in probable cause that [the officer] knew, or should have known, that the search was illegal"). Colorado also has a statutory good-faith exception in the form of section 16–3–308, 6 C.R.S. (1997). Section 16–3–308 requires an objective standard substantially similar to the reasonableness requirement described in *Leon*. *See Leftwich*, 869 P.2d at 1272.

In *Leftwich*, we discussed the relationship between the *Gates* probable cause standard and the *Leon* good faith exception, especially with respect to a bare bones affidavit. *See id.* at 1269–72. We noted that the totality of the circumstances test announced in *Gates* requires a reasonable belief in the existence of probable cause to search. *See Leftwich*, 869 P.2d at 1271 n. 12. Thus, probable cause is lacking where the affidavit is so devoid of incriminating facts as to prevent a "practical, common-sense" determination that contraband or evidence of a crime will be found in the place to be searched. *See id.* at 1265.

Given that the standard for probable cause depends upon whether a belief in the existence of probable cause is objectively reasonable, we explained the extensive overlap between the *Gates* test and the *Leon* good faith test. *See Leftwich*, 869 P.2d at 1271 n. 12. We noted, " 'Because the standards overlap so completely, it is unlikely that a warrant could be found invalid under *Gates* and yet the police reliance upon it could be seen as objectively reasonable.' " *Id.* (quoting *Leon*, 468 U.S. at 958–59, 104 S.Ct. 3405 (Brennan, J., dissenting)). Accordingly, we concluded that "in the *vast majority* of cases, if a court applies *Gates* and ascertains that a substantial basis for determining probable cause did

not exist, the court will reach the conclusion that the officer unreasonably relied on the affidavit." *Leftwich*, 869 P.2d at 1271 n. 12 (emphasis supplied).

Thus, we are presented with the following question: does this case fall into that minute category of cases where the affidavit failed to provide a substantial basis for determining probable cause yet the officer's reliance upon the affidavit was reasonable? In other words, does this case reflect "objectively reasonable reliance upon an objectively unreasonable warrant?" *Id.* (quoting *Leon*, 468 U.S. at 958–59, 104 S.Ct. 3405 (Brennan, J., dissenting)). I would answer these questions in the negative.

As the discussion in Part II of this opinion demonstrates, this affidavit fell far short of establishing probable cause to search. At the very most, the affidavit established a suspicion that Altman's home contained contraband or evidence of a crime. The affidavit lacked specific allegations that Altman was currently or previously engaged in illegal drug activity and it lacked facts indicating that a search of his residence was likely to uncover contraband. Because this was an archetypal bare bones affidavit, no police officer could reasonably rely upon this warrant.

The majority's conclusion that Officer Landolt's reliance upon this warrant was reasonable is grounded in one of two theories. First, the majority may mean that reliance upon this affidavit was reasonable because the situation described by this affidavit is just a fact or two away from establishing probable cause. However, this cannot be the standard for good faith reliance upon a search warrant. If the purpose behind the exclusionary rule is to deter unlawful police conduct, *see Leon*, 468 U.S. at 919, 104 S.Ct. 3405, we cannot interpret the good faith exception to permit a search by police where the officer knows or should know that he or she is a just a few facts away from having probable cause to search. To give effect to the protections of the Fourth Amendment, we must insist that police officers either find the few additional, but vital, facts necessary to support a search, or else refrain from conducting a search. Otherwise, "the constitutional requirement that a search warrant

only issue upon probable cause becomes a nullity." *Leftwich*, 869 P.2d at 1268.

Alternatively, the majority sanctions the officer's reliance upon the warrant on the theory that reasonable minds may disagree about whether the particular facts in this affidavit alone establish probable cause. This assertion is simply incorrect. There is no precedent for a showing of probable cause on facts as sparse as these. *See* discussion *supra* Part II.B. Every like case in which a court has upheld a probable cause determination has contained significant additional facts that are absent from this affidavit.

Furthermore, a number of courts that have examined affidavits containing more incriminating facts than are found in this case have held the *Leon* good faith exception inapplicable. For example, the North Dakota Supreme Court in *Lewis* not only rejected a showing of probable cause, but also rejected the claim that the officer reasonably relied upon the warrant. *See Lewis*, 527 N.W.2d at 663; *see also* discussion *supra* p. 9. The affidavit in that case described, in addition to the use of indoor growing equipment and excessive electrical use, windows covered with styrofoam and fiberglass, excess infrared heat emanating from the house, and an informant who spoke of a marijuana cultivation operation in the area. Yet, the *Lewis* court found that "[t]he implication of criminal activity in this case is simply too weak and tenuous to make it objectively reasonable for the officers to rely on the warrant." *Lewis*, 527 N.W.2d at 663.

Similarly, in *State v. Huft*, the Washington Supreme Court refused to find good faith reliance upon a defective search warrant. 106 Wash.2d 206, 720 P.2d 838, 841 (1986). In that case, the affidavit contained allegations from an informant that the defendant was growing marijuana in his basement, information about excessive electrical use, and an officer's observation of an unusually bright light emanating from the basement. *See id.* 720 P.2d at 839. After rejecting a showing of probable cause, the court concluded that "the affidavit in support of the probable cause was no more than a 'bare bones' affidavit and was invalid. Quality of information, not quantity, is what establishes proba-

ble cause." *Id.* at 841; *see also Diamond,* 628 A.2d at 1034 (officer's reliance upon affidavit that alleged only noncriminal behavior was not objectively reasonable).

Consequently, it is clear that the facts alleged by the affidavit in this case would not "create disagreement among thoughtful and competent judges as to the existence of probable cause." *Leon,* 468 U.S. at 926, 104 S.Ct. 3405. This point is further illustrated by the fact that every judicial officer who has reflected upon this case has reached this conclusion.[3] Moreover, because the *Leon* test "requires officers to have a reasonable knowledge of what the law prohibits," *id.* at 919 n. 20, 104 S.Ct. 3405, these sparse facts would not lead a reasonable police officer to conclude that probable cause existed.[4] The only reasonable conclusion that flows from these facts is that the affidavit did not provide a substantial basis for a belief in the existence of probable cause.

Because the affidavit in this case was largely devoid of indicia of probable cause, I would hold that this case does not belong to the very small category of cases, described by *Leftwich,* where the *Leon* good faith doctrine applies. Therefore, reliance upon the affidavit underlying the search warrant was objectively unreasonable. Accordingly, I would affirm the judgment of the court of appeals.

IV.

To summarize, the affidavit in this case failed to establish probable cause to search Altman's home. Moreover, the affidavit did not contain sufficient facts to render reasonable a belief in the existence of probable cause. Thus, the police search of Altman's home was illegal, and the product of that search should have been suppressed at trial. Because the majority's holding approves of the use of this evidence to convict Altman, I respectfully dissent.

MULLARKEY and BENDER, JJ., join in the dissent.

---

3. The majority suggests that these facts present a close case of probable cause because the judge who issued the warrant initially believed probable cause existed, and then reversed his decision "upon further review." Maj. op. at 1168. First of all, as the majority concedes, "the fact that a magistrate acted favorably upon a warrant request is of no moment in the determination of whether the officer acted with objective reasonableness." *Leftwich,* 869 P.2d at 1269 n. 11; *see* maj. op. at 1169 n. 3. Secondly, the fact that the issuing judge reversed his initial probable cause finding implies nothing more than that the judge ultimately found probable cause lacking. If, however, one is inclined to draw inferences from the judge's reversal of his previous decision, one may infer from this reversal that the affidavit was so devoid of probable cause that the issuing judge thought it necessary to publicly disagree with himself even though he believed the product of the search was admissible for other reasons.

4. As the *Leon* court noted, " '[T]he requirement that the officer act in "good faith" is inconsistent with closing one's mind to the possibility of illegality.' " 468 U.S. at 919 n. 20, 104 S.Ct. 3405 (quoting Israel, *Criminal Procedure, the Burger Court, and the Legacy of the Warren Court,* 75 Mich.L.Rev. 1319, 1413 (1977)).